RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
NISHA BROOKS-WHITTINGTON
Assistant Federal Public Defender
SUNETHRA MURALIDHARA
Assistant Federal Public Defender
Nevada State Bar No. 13549
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Nisha_Brooks-Whittington@fd.org
Sunethra_Muralidhara@fd.org

Attorneys for Charles Dylan Kay

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:03-cr-00074-GMN-1 |
| Respondent/Plaintiff, | |
| v. | **MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING AND AUTHORITY ON _BECKLES v. UNITED STATES_, IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT CRIMINAL CONVICTIONS AND SENTENCE PURSUANT TO 28 U.S.C. § 2255** |
| CHARLES DYLAN KAY, | |
| Petitioner/Defendant. | |

Petitioner/Defendant, CHARLES DYLAN KAY, through undersigned counsel, Assistant Federal Public Defender NISHA BROOKS-WHITTINGTON, and SUNETHRA MURALIDHARA, move the Court for leave pursuant to Local Rule 7-2(g) to file supplemental briefing and authority in support of his Motion to Vacate, Set Aside, or Correct Criminal Convictions and Sentence Pursuant to 28 U.S.C. § 2255.

DATED this 21st day of April, 2017.

RENE L. VALLADARES
Federal Public Defender

By:  */s/ Nisha Brooks-Whittington*
NISHA BROOKS-WHITTINGTON
Assistant Federal Public Defender

By:  */s/ Sunethra Muralidhara*
SUNETHRA MURALIDHARA
Assistant Federal Public Defender

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Procedural History

On June 22, 2016, Mr. Kay filed an Abridged Motion to Vacate, Set Aside or Correct Criminal Convictions and Sentence under 28 U.S.C. § 2255 ("Motion to Vacate") seeking sentencing relief under the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). ECF No. 34. On December 22, 2016, Mr. Kay filed his supplemental Motion to Vacate. ECF No. 38. In his Motion to Vacate, Mr. Kay argued the Supreme Court's decision in *Johnson*, 135 S. Ct. 2551, holding the "residual clause" of the Armed Career Criminal Act ("ACCA") void for vagueness applied to render his sentence unconstitutional. *See* ECF No. 38. Specifically, Mr. Kay contended *Johnson* applied to the identically-worded "residual clause" in the career offender definition of a "crime of violence" at U.S.S.G. § 4B1.2(a)(2). *See* ECF No. 38. On February 3, 2017, the government filed an Opposition to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Opposition to Motion to Vacate"). ECF No. 40. On March 3, 2017, Mr. Kay filed his reply brief. ECF No. 43.

On March 6, 2017, the Supreme Court issued its decision in *Beckles v. United States*, holding the advisory Sentencing Guidelines are not subject to a due process vagueness challenge. No. 15-8544, 2017 WL 855781, at *9 (U.S. Mar. 6, 2017). The *Beckles* decision, however, is predicated on the discretionary nature of the Sentencing Guidelines. Mr. Kay was sentenced at a time when the Guidelines were *mandatory*, not discretionary. Thus, *Beckles* does not foreclose Mr. Kay's Motion to Vacate.

At the time of this filing, the Court has not issued a ruling on the Motion to Vacate. Mr. Kay now seeks leave of Court to file supplemental briefing and authority. Local Rule 7-2(g) provides that "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." There is good cause to allow Mr. Kay to file supplemental briefing and authority to support his Motion to Vacate for several reasons: (1) he

relied on the *Johnson* decision to support his Motion to Vacate; (2) the government and Mr. Kay in briefing before this Court recognize that *Beckles* may be relevant to this Court's decision (*See* ECF Nos. 38, 40) and (3) the *Beckles* decision was recently issued on March 6, 2017, after briefing was completed in this case. As such, Mr. Kay respectfully requests leave to file supplemental briefing and authority regarding *Beckles*, which is attached as Exhibit A.

**III.    Conclusion**

For these reasons, Mr. Kay respectfully requests leave of this Court to file supplemental briefing and authority (attached hereto as Exhibit A) in support of his Motion to Vacate.

DATED this 21st day of April, 2017.

By: */s/ Nisha Brooks-Whittington*
NISHA BROOKS-WHITTINGTON
Assistant Federal Public Defender


By: */s/ Sunethra Muralidhara*
SUNETHRA MURALIDHARA
Assistant Federal Public Defender



**IT IS SO ORDERED.**
**IT IS FURTHER ORDERED** that Defendant Charles Dylan Kay shall have until May 22, 2017, to file Supplemental briefing. The Government shall have until June 22, 2017, to file a Response.

**DATED** this ___ day of April, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on April 21, 2017, she served an electronic copy of the above and foregoing **MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING AND AUTHORITY ON *BECKLES v. UNITED STATES*, IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT CRIMINAL CONVICTIONS AND SENTENCE PURSUANT TO 28 U.S.C. § 2255** by electronic service (ECF) to the person named below:

DANIEL G. BOGDEN
United States Attorney
ELIZABETH O. WHITE
Appellate Chief and
Assistant United States Attorney
100 West Liberty, Suite 600
Reno, NV 89501

*/s/ Karen Meyer*
Employee of the Federal Public Defender

# EXHIBIT "A"

# EXHIBIT "A"

2017 WL 855781
Supreme Court of the United States

Travis BECKLES, Petitioner

v.

UNITED STATES.

No. 15–8544.
|
Argued Nov. 28, 2016.
|
Decided March 6, 2017.

**Synopsis**

**Background:** Defendant was convicted of being convicted felon in possession of firearm by the United States District Court for the Southern District of Florida, No. 07-20305-CR-CMA, Cecilia M. Altonaga, J., 2007 WL 2155647, and he was sentenced as a career offender under the Sentencing Guidelines. Defendant appealed. The United States Court of Appeals for the Eleventh Circuit, Marcus, Circuit Judge, 565 F.3d 832, affirmed. Following affirmance of denial of defendant's motion to vacate his sentence, 579 Fed.Appx. 833, defendant petitioned for certiorari. The Supreme Court, — U.S. ——, 135 S.Ct. 2928, 192 L.Ed.2d 973, remanded for further consideration in light of *Johnson v. U.S.* The Court of Appeals, 616 Fed.Appx. 415, again affirmed. Certiorari was granted.

**[Holding:]** The United States Supreme Court, Justice Thomas, held that Sentencing Guidelines were not subject to a void for vagueness challenge under Fifth Amendment Due Process Clause, abrogating *U.S. v. Townsend,* 638 Fed.Appx. 172; *U.S. v. Pawlak,* 822 F.3d 902; *U.S. v. Hurlburt,* 835 F.3d 715; *U.S. v. Madrid,* 805 F.3d 1204.

Affirmed.

Justice Kennedy filed a concurring opinion.

Justice Ginsburg filed an opinion concurring in the judgment.

Justice Sotomayor filed an opinion concurring in the judgment.

Justice Kagan took no part in the consideration or decision of the case.

West Headnotes (6)

**[1]** **Constitutional Law**

Vagueness

The Due Process Clause of the Fifth Amendment prohibits the Government from taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. U.S.C.A. Const.Amend. 5.

Cases that cite this headnote

**[2]** **Constitutional Law**
Vagueness

The void-for-vagueness doctrine under Fifth Amendment due process requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. U.S.C.A. Const.Amend. 5.

Cases that cite this headnote

**[3]** **Constitutional Law**

Propriety of Sentence in General

To not be void for vagueness under Fifth Amendment due process, statutes fixing sentences must specify the range of available sentences with sufficient clarity. U.S.C.A. Const.Amend. 5.

4 Cases that cite this headnote

**[4]** **Sentencing and Punishment**
Factors or Purposes in General
**Sentencing and Punishment**

 Operation and Effect of Guidelines in
 General

Although the Sentencing Guidelines remain
the starting point and the initial benchmark
for sentencing, a sentencing court may not
rely exclusively on the Guidelines range;
rather, a court must make an individualized
assessment based on the facts presented and
the other statutory factors. 18 U.S.C.A. §
3553; U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

Cases that cite this headnote


[5]   **Constitutional Law**
       Sentencing Guidelines

      **Sentencing and Punishment**
       Validity

The Sentencing Guidelines were not subject
to a void for vagueness challenge under
Fifth Amendment Due Process Clause; prior
system of purely discretionary sentencing
was constitutionally permissible, Guidelines
system provided guidance, all of the required
notice was provided by applicable statutory
range, which established permissible bounds
of sentencing discretion, and Guidelines
did not implicate concern with arbitrary
enforcement since they did not prohibit any
conduct or establish minimum and maximum
penalties for any crime; abrogating *U.S.
v. Townsend,* 638 Fed.Appx. 172; *U.S. v.
Pawlak,* 822 F.3d 902; *U.S. v. Hurlburt,* 835
F.3d 715; *U.S. v. Madrid,* 805 F.3d 1204.
U.S.C.A. Const.Amend. 5; 18 U.S.C.A. §
3553; U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

Cases that cite this headnote


[6]   **Constitutional Law**
       Certainty and Definiteness;Vagueness

      **Constitutional Law**
       Propriety of Sentence in General

To not be void for vagueness under Fifth
Amendment due process, laws that regulate
persons or entities must be sufficiently clear
that those enforcing the law do not act
in an arbitrary or discriminatory way; an
unconstitutionally vague law invites arbitrary

enforcement in this sense if it leaves judges
and jurors free to decide, without any legally
fixed standards, what is prohibited and what
is not in each particular case, or permits them
to prescribe the sentences or sentencing range
available. U.S.C.A. Const.Amend. 5.

Cases that cite this headnote


**West Codenotes**

**Recognized as Unconstitutional**
18 U.S.C.A. § 924(e)(2)(B)

**Negative Treatment Reconsidered**
U.S.S.G. § 4B1.2(a)(2), 18 U.S.C.A.


*Syllabus* [*]

**\*1**  Petitioner Beckles was convicted of possession of
a firearm by a convicted felon, 18 U.S.C. § 922(g)(1).
His presentence investigation report concluded that he
was eligible for a sentencing enhancement as a "career
offender" under United States Sentencing Guideline §
4B1.1(a) because his offense qualified as a "crime of
violence" under § 4B1.2(a)'s residual clause. The District
Court sentenced petitioner as a career offender, and
the Eleventh Circuit affirmed. Petitioner then filed a
postconviction motion to vacate his sentence, arguing
that his offense was not a "crime of violence." The
District Court denied the motion, and the Eleventh
Circuit affirmed. Petitioner next filed a petition for a
writ of certiorari from this Court. While his petition
was pending, this Court held that the identically worded
residual clause in the Armed Career Criminal Act of
1984 (ACCA), § 924(e)(2)(b), was unconstitutionally
vague, *Johnson v. United States,* 576 U.S. ——, 135
S.Ct. 2551, 192 L.Ed.2d 569). The Court vacated and
remanded petitioner's case in light of *Johnson.* On remand,
the Eleventh Circuit affirmed again, distinguishing the
ACCA's unconstitutionally vague residual clause from the
residual clause in the Sentencing Guidelines.


*Held* : The Federal Sentencing Guidelines, including §
4B1.2(a)'s residual clause, are not subject to vagueness
challenges under the Due Process Clause. Pp. —— – ——.

(a) The Due Process Clause prohibits the Government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson, supra,* at ——– – ——, 135 S.Ct., at 2556. Under the void-for-vagueness doctrine, laws that fix the permissible sentences for criminal offenses must specify the range of available sentences with "sufficient clarity." *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755. In Johnson, this Court held that the ACCA's residual clause fixed—in an impermissibly vague way—a higher range of sentences for certain defendants. But the advisory Guidelines do not fix the permissible range of sentences. They merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range. Pp. ——– – ——.

(1) The limited scope of the void-for-vagueness doctrine in this context is rooted in the history of federal sentencing. Congress has long permitted district courts "wide discretion to decide whether the offender should be incarcerated and for how long." *Mistretta v. United States,* 488 U.S. 361, 363, 109 S.Ct. 647, 102 L.Ed.2d 714. Yet this Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range," *United States v. Booker,* 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621, nor suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range, even when that discretion is unfettered, see *Batchelder, supra,* at 123, 126, 99 S.Ct. 2198. Pp. ——– – ——.

**\*2** (2) The Sentencing Reform Act of 1984 departed from this regime by establishing several factors to guide district courts in exercising their sentencing discretion. It also created the United States Sentencing Commission and charged it with establishing the Federal Sentencing Guidelines. Because the Guidelines have been rendered "effectively advisory" by this Court, *Booker, supra,* at 245, 125 S.Ct. 738, they guide district courts in exercising their discretion, but do not constrain that discretion. Accordingly, they are not amenable to vagueness challenges: If a system of unfettered discretion is not unconstitutionally vague, then it is difficult to see how the present system of guided discretion could be. Neither do they implicate the twin concerns underlying vagueness doctrine—providing notice and preventing

arbitrary enforcement. The applicable statutory range, which establishes the permissible bounds of the court's sentencing discretion, provides all the notice that is required. Similarly, the Guidelines do not invite arbitrary enforcement within the meaning of this Court's case law, because they do not permit the sentencing court to prohibit behavior or to prescribe the sentencing ranges available. Rather, they advise sentencing courts how to exercise their discretion within the bounds established by Congress. Pp. ——– – ——.

(b) The holding in this case does not render the advisory Guidelines immune from constitutional scrutiny, see, *e.g., Peugh v. United States,* 569 U.S. ——, 133 S.Ct. 2072, 186 L.Ed.2d 84, or render "sentencing procedure[s]" entirely "immune from scrutiny under the due process clause," *Williams v. New York,* 337 U.S. 241, 252, n. 18, 69 S.Ct. 1079, 93 L.Ed. 1337. This Court holds only that the Sentencing Guidelines are not subject to a challenge under the void-for-vagueness doctrine. Pp. ——– – ——.

(c) Nor does this holding cast doubt on the validity of the other factors that sentencing courts must consider in exercising their sentencing discretion. See §§ 3553(a)(1)–(3), (5)–(7). A contrary holding, however, would cast serious doubt on those other factors because many of them appear at least as unclear as § 4B1.2(a)'s residual clause. This Court rejects the Government's argument that the individualized sentencing required by those other factors is distinguishable from that required by the Guidelines. It is far from obvious that § 4B1.2(a)'s residual clause implicates the twin concerns of vagueness more than the other factors do, and neither the Guidelines nor the other factors implicate those concerns more than the absence of any guidance at all, which the Government concedes is constitutional. Pp. ——– – ——.

616 Fed.Appx. 415, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C.J., and KENNEDY, BREYER, and ALITO, JJ., joined. KENNEDY, J., filed a concurring opinion. GINSBURG, J., and SOTOMAYOR, J., filed opinions concurring in the judgment. KAGAN, J., took no part in the consideration or decision of the case.

**Attorneys and Law Firms**

Janice L. Bergmann, Fort Lauderdale, FL, for Petitioner.

Michael R. Dreeben, Washington, DC, for Respondent.

Adam K. Mortara, appointed by this Court, as amicus curiae, supporting the judgment below on Question 2.

Michael Caruso, Federal Public Defender, Janice L. Bergmann, Assistant Federal Public Defender, Andrew L. Adler, Assistant Federal Public Defender, Fort Lauderdale, FL, for Petitioner.

Donald B. Verrilli, Jr., Solicitor General, Leslie R. Caldwell, Assistant Attorney General, Nina Goodman, Attorney, Ian Heath Gershengorn, Acting Solicitor General, Michael R. Dreeben, Deputy Solicitor General, John F. Bash, Assistant to the Solicitor General, Department of Justice, Washington, DC, for the United States.

**Opinion**

Justice THOMAS delivered the opinion of the Court.

**\*3**  At the time of petitioner's sentencing, the advisory Sentencing Guidelines included a residual clause defining a "crime of violence" as an offense that "involves conduct that presents a serious potential risk of physical injury to another." United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov. 2006) (U.S.S.G.). This Court held in *Johnson v. United States,* 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), that the identically worded residual clause in the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. Petitioner contends that the Guidelines' residual clause is also void for vagueness. Because we hold that the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause, we reject petitioner's argument.

**I**

Petitioner Travis Beckles was convicted in 2007 of possession of a firearm by a convicted felon, § 922(g)(1). According to the presentence investigation report, the firearm was a sawed-off shotgun, and petitioner was therefore eligible for a sentencing enhancement as a "career offender" under the Sentencing Guidelines. The 2006 version of the Guidelines, which were in effect when petitioner was sentenced,[1] provided that "[a] defendant is a career offender if

"(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The Guidelines defined "crime of violence" as

"any offense under federal or state law, punishable by imprisonment for a term exceeding one year that—

"(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

"(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" § 4B1.2(a) (emphasis added).

The clause beginning with "or otherwise" in this definition is known as the residual clause. The commentary to the career-offender Guideline provided that possession of a sawed-off shotgun was a crime of violence. See § 4B1.2, comment., n. 1 ("Unlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (*e.g.,* a sawed-off shotgun ... ) is a 'crime of violence' "); § 5845(a) ("The term 'firearm' means (1) a shotgun having a barrel or barrels of less than 18 inches in length").

**\*4**  The District Court agreed that petitioner qualified as a career offender under the Guidelines. Petitioner was over 18 years of age at the time of his offense, and his criminal history included multiple prior felony convictions for controlled substance offenses. Furthermore, in the District Court's view, petitioner's § 922(g)(1) conviction qualified as a "crime of violence." Because he qualified as a career offender, petitioner's Guidelines range was 360 months to life imprisonment. The District Court sentenced petitioner to 360 months. The Court of Appeals affirmed petitioner's conviction and sentence, and this Court denied certiorari. *United States v. Beckles,* 565 F.3d 832, 846 (C.A.11), cert. denied, 558 U.S. 906, 130 S.Ct. 272, 175 L.Ed.2d 183 (2009).

In September 2010, petitioner filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing that his conviction for unlawful possession of a firearm was not a "crime of violence," and therefore that he did not qualify as a career offender under the Guidelines. The District Court denied the motion, and the Court of Appeals affirmed.

Petitioner then filed a second petition for certiorari in this Court. While his petition was pending, the Court decided *Johnson,* holding that "imposing an increased sentence under the residual clause of the [ACCA]"—which contained the same language as the Guidelines' residual clause—"violate[d] the Constitution's guarantee of due process" because the clause was unconstitutionally vague. 576 U.S., at ——, 135 S.Ct., at 2563. We subsequently granted his petition, vacated the judgment of the Court of Appeals, and remanded for further consideration in light of *Johnson. Beckles v. United States,* 576 U.S. ——, 135 S.Ct. 2928, 192 L.Ed.2d 973 (2015).

On remand, petitioner argued that his enhanced sentence was based on § 4B1.2(a)'s residual clause, which he contended was unconstitutionally vague under *Johnson.* The Court of Appeals again affirmed. It noted that petitioner "was sentenced as a career offender based *not* on the ACCA's residual clause, but based on express language in the Sentencing Guidelines classifying [his] offense as a 'crime of violence.' " 616 Fed.Appx. 415, 416 (2015) (*per curiam* ). "*Johnson,*" the Court of Appeals reasoned, "says and decided nothing about career-offender enhancements under the Sentencing Guidelines or about the Guidelines commentary underlying [petitioner]'s status as a career-offender." *Ibid.* The Court of Appeals denied rehearing en banc.

**\*5** Petitioner filed another petition for certiorari in this Court, again contending that § 4B1.2(a)'s residual clause is void for vagueness. To resolve a conflict among the Courts of Appeals on the question whether *Johnson* 's vagueness holding applies to the residual clause in § 4B1.2(a) of the Guidelines,[2] we granted certiorari. 579 U.S. ——, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016). Because the United States, as respondent, agrees with petitioner that the Guidelines are subject to vagueness challenges, the Court appointed Adam K. Mortara as *amicus curiae* to argue the contrary position. 579 U.S. ——, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016). He has ably discharged his responsibilities.

## II

**[1]**   This Court has held that the Due Process Clause prohibits the Government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson,* 576 U.S., at —— – ——, 135 S.Ct., at 2556 (citing *Kolender v. Lawson,* 461 U.S. 352, 357–358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). Applying this standard, the Court has invalidated two kinds of criminal laws as "void for vagueness": laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses.

**[2]   [3]**   For the former, the Court has explained that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.,* at 357, 103 S.Ct. 1855. For the latter, the Court has explained that "statutes fixing sentences," *Johnson, supra,* at ——, 135 S.Ct., at 2557 (citing *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)), must specify the range of available sentences with "sufficient clarity," *id.,* at 123, 99 S.Ct. 2198; see also *United States v. Evans,* 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948); cf. *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

In *Johnson*, we applied the vagueness rule to a statute fixing permissible sentences. The ACCA's residual clause, where applicable, required sentencing courts to increase a defendant's prison term from a statutory maximum of 10 years to a minimum of 15 years. That requirement thus fixed—in an impermissibly vague way—a higher range of sentences for certain defendants. See *Alleyne v. United States,* 570 U.S. ——, ——, 133 S.Ct. 2151, 2160–2161, 186 L.Ed.2d 314 (2013) (describing the legally prescribed range of available sentences as the penalty fixed to a crime).

**\*6** Unlike the ACCA, however, the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within

the statutory range. Accordingly, the Guidelines are not subject to a vagueness challenge under the Due Process Clause. The residual clause in § 4B1.2(a)(2) therefore is not void for vagueness.

A

The limited scope of the void-for-vagueness doctrine in this context is rooted in the history of federal sentencing. Instead of enacting specific sentences for particular federal crimes, Congress historically permitted district courts "wide discretion to decide whether the offender should be incarcerated and for how long." *Mistretta v. United States,* 488 U.S. 361, 363, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). For most crimes, Congress set forth a range of sentences, and sentencing courts had "almost unfettered discretion" to select the actual length of a defendant's sentence "within the customarily wide range" Congress had enacted. *Id.,* at 364, 109 S.Ct. 647; see also, *e.g., Apprendi v. New Jersey,* 530 U.S. 466, 481–482, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Williams v. New York,* 337 U.S. 241, 247–248, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). That discretion allowed district courts to craft individualized sentences, taking into account the facts of the crime and the history of the defendant. As a result, "[s]erious disparities in sentences ... were common." *Mistretta, supra,* at 365, 109 S.Ct. 647

Yet in the long history of discretionary sentencing, this Court has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker,* 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); see also, *e.g., Apprendi, supra,* at 481, 120 S.Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion ... in imposing a judgment *within the range* prescribed by statute"); *Giaccio, supra,* at 405, n. 8, 86 S.Ct. 518 ("[W]e intend to cast no doubt whatever on the constitutionality of the settled practice of many States to leave to juries finding defendants guilty of a crime power to fix punishment within legally prescribed limits").

More specifically, our cases have never suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range, even when that discretion is unfettered. In fact, our reasoning in *Batchelder* suggests the opposite. This Court considered in that case the constitutionality of two overlapping criminal provisions that authorized different maximum penalties for the same conduct. 442 U.S., at 115–116, 99 S.Ct. 2198. The Court held that the sentencing provisions were not void for vagueness because they specified the "penalties available" and defined the "punishment authorized" upon conviction for each crime. *Id.,* at 123, 99 S.Ct. 2198. "Although the statutes create[d] uncertainty as to which crime may be charged and therefore what penalties may be imposed, they d[id] so *to no greater extent than would a single statute authorizing various alternative punishments.*" *Ibid.* (emphasis added). By specifying "the *range* of penalties that prosecutors and judges may seek and impose," Congress had "fulfilled its duty." *Id.,* at 126, 99 S.Ct. 2198 (citing *Evans, supra,* at 483, 68 S.Ct. 634; emphasis added). Indeed, no party to this case suggests that a system of purely discretionary sentencing could be subject to a vagueness challenge.

B

**\*7** The Sentencing Reform Act of 1984 departed from this regime by establishing several factors to guide district courts in exercising their traditional sentencing discretion. 18 U.S.C. § 3553. Congress in the same Act created the United States Sentencing Commission and charged it with establishing guidelines to be used for sentencing. *Mistretta, supra,* at 367, 109 S.Ct. 647. The result of the Commission's work is the Federal Sentencing Guidelines, which are one of the sentencing factors that the Act requires courts to consider. § 3553(a)(4).

**[4]** The Guidelines were initially binding on district courts, *Booker,* 543 U.S., at 233, 125 S.Ct. 738, but this Court in *Booker* rendered them "effectively advisory," *id.,* at 245, 125 S.Ct. 738. Although the Guidelines remain "the starting point and the initial benchmark" for sentencing, a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court "must make an individualized assessment based on the facts presented" and the other statutory factors. *Gall v. United States,* 552 U.S. 38, 49, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The Guidelines thus continue to guide district courts in exercising their discretion by serving as "the framework for sentencing," *Peugh v. United States,* 569 U.S. ——, ——, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013), but they "do not constrain th[at] discretion," *id.,* at ——, 133 S.Ct., at 2089 (THOMAS, J., dissenting).

**[5]**  Because they merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge. As discussed above, the system of purely discretionary sentencing that predated the Guidelines was constitutionally permissible. If a system of unfettered discretion is not unconstitutionally vague, then it is difficult to see how the present system of guided discretion could be.

**\*8**  The advisory Guidelines also do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement. As to notice, even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range. See, *e.g., Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). That is because even if a person behaves so as to avoid an enhanced sentence under the career-offender guideline, the sentencing court retains discretion to impose the enhanced sentence. See, *e.g., Pepper v. United States,* 562 U.S. 476, 501, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) ("[O]ur post-*Booker* decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views"). As we held in *Irizarry v. United States,* 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008), "[t]he due process concerns that ... require notice in a world of mandatory Guidelines no longer" apply. *Id.,* at 714, 128 S.Ct. 2198; see *id.,* at 713, 128 S.Ct. 2198 ("Any expectation subject to due process protection ... that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive our decision in [*Booker* ], which invalidated the mandatory features of the Guidelines"). All of the notice required is provided by the applicable statutory range, which establishes the permissible bounds of the court's sentencing discretion.

**[6]**  The advisory Guidelines also do not implicate the vagueness doctrine's concern with arbitrary enforcement. Laws that "regulate persons or entities," we have explained, must be sufficiently clear "that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.,* 567 U.S. 239, 253, 132 S.Ct. 2307, 183 L.Ed.2d 234 (2012); see also *Grayned, supra,* at 108–109, 92 S.Ct. 2294 ("A vague law impermissibly delegates basic policy matters" to judges "for resolution on an *ad hoc* and subjective basis"). An unconstitutionally vague law invites arbitrary

enforcement in this sense if it "leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case," *Giaccio,* 382 U.S., at 402–403, 86 S.Ct. 518, or permits them to prescribe the sentences or sentencing range available, cf. *Alleyne,* 570 U.S., at ––––, 133 S.Ct., at 2160–2161 ("[T]he legally prescribed range *is* the penalty affixed to the crime").

The Guidelines, however, do not regulate the public by prohibiting any conduct or by "establishing minimum and maximum penalties for [any] crime." *Mistretta,* 488 U.S., at 396, 109 S.Ct. 647 (Sentencing Guidelines "do not bind or regulate the primary conduct of the public"). Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress. In this case, for example, the District Court did not "enforce" the career-offender Guideline against petitioner. It enforced 18 U.S.C. § 922(g)(1)'s prohibition on possession of a firearm by a felon—which prohibited petitioner's conduct—and § 924(e)(1)'s mandate of a sentence of 15 years to life imprisonment—which fixed the permissible range of petitioner's sentence. The court relied on the career-offender Guideline merely for advice in exercising its discretion to choose a sentence within those statutory limits.

Justice SOTOMAYOR's concurrence suggests that judges interpreting a vague sentencing Guideline might rely on "statistical analysis," "gut instinct," or the judge's "own feelings" to decide whether a defendant's conviction is a crime of violence. *Post,* at –––– (opinion concurring in judgment) (internal quotation marks omitted). A judge granted unfettered discretion could use those same approaches in determining a defendant's sentence. Indeed, the concurrence notes that federal judges before the Guidelines considered their own "view[s] of proper sentencing policy," among other considerations. *Post,* at ––––. Yet we have never suggested that unfettered discretion can be void for vagueness.

**\*9**  Accordingly, we hold that the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness.

III

Our holding today does not render the advisory Guidelines immune from constitutional scrutiny. This Court held in *Peugh,* for example, that a "retrospective increase in the Guidelines range applicable to a defendant" violates the *Ex Post Facto* Clause. 569 U.S., at ——, 133 S.Ct., at 2084. But the void-for-vagueness and *ex post facto* inquiries are "analytically distinct." See *id.,* at ——, 133 S.Ct., at 2088 (distinguishing an *ex post facto* inquiry from a Sixth Amendment inquiry). Our *ex post facto* cases "have focused on whether a change in law creates a 'significant risk' of a higher sentence." *Ibid.* A retroactive change in the Guidelines creates such a risk because "sentencing decisions are anchored by the Guidelines," which establish "the framework for sentencing." *Id.,* at ——, ——, 133 S.Ct., at 2083. In contrast, the void-for-vagueness doctrine requires a different inquiry. The question is whether a law regulating private conduct by fixing permissible sentences provides notice and avoids arbitrary enforcement by clearly specifying the range of penalties available. The Government's rebuttal that both doctrines are concerned with " 'fundamental justice,' " Reply Brief for United States 7, ignores the contours of our precedents.

The Court has also recognized "in the *Eighth Amendment* context" that a district court's reliance on a vague sentencing factor in a capital case, even indirectly, "can taint the sentence." Brief for United States 43 (citing *Espinosa v. Florida,* 505 U.S. 1079, 1082, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (*per curiam* ); emphasis added). But our approach to vagueness under the Due Process Clause is not interchangeable with "the rationale of our cases construing and applying the Eighth Amendment." *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Our decision in *Espinosa* is thus inapposite, as it did not involve advisory Sentencing Guidelines or the Due Process Clause.

Finally, our holding today also does not render "sentencing procedure[s]" entirely "immune from scrutiny under the due process clause." *Williams,* 337 U.S., at 252, n. 18, 69 S.Ct. 1079; see, *e.g., Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (holding that due process is violated when a court relies on "extensively and materially false" evidence to impose a sentence on an uncounseled defendant). We hold only that the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine.

IV

**\*10** In addition to directing sentencing courts to consider the Guidelines, see § 3553(a)(4)(A), Congress has directed them to consider a number of other factors in exercising their sentencing discretion, see §§ 3553(a)(1)–(3), (5)–(7). The Government concedes that "American judges have long made th [e] sorts of judgments" called for by the § 3553(a) factors "in indeterminate-sentencing schemes, and this Court has never understood such discretionary determinations to raise vagueness concerns." Brief for United States 42. Because the § 3553 factors—like the Guidelines—do not mandate any specific sentences, but rather guide the exercise of a district court's discretion within the applicable statutory range, our holding today casts no doubt on their validity.

Holding that the Guidelines are subject to vagueness challenges under the Due Process Clause, however, would cast serious doubt on their validity. Many of these other factors appear at least as unclear as § 4B1.2(a)'s residual clause. For example, courts must assess "the need for the sentence imposed" to achieve certain goals—such as to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "provide the defendant with needed educational or vocational training ... in the most effective manner." § 3553(a)(2). If petitioner were correct that § 4B1.2(a)'s residual clause were subject to a vagueness challenge, we would be hard pressed to find these factors sufficiently definite to provide adequate notice and prevent arbitrary enforcement.

The Government tries to have it both ways, arguing that the individualized sentencing required by the other § 3553(a) factors is different in kind from that required by the Guidelines. "An inscrutably vague advisory guideline," it contends, "injects arbitrariness into the sentencing process that is not found in the exercise of unguided discretion in a traditional sentencing system." Reply Brief for United States 10–11. But it is far from obvious that the residual clause implicates the twin concerns of vagueness any more than the statutory command that sentencing courts impose a sentence tailored, for example, "to promote respect for the law." § 3553(a)(2)(A). And neither the Guidelines nor the other

§ 3553 factors implicate those concerns more than the absence of any guidance at all, which the Government concedes is constitutional.

**\*11** The Government also suggests that the Guidelines are not like the other § 3553(a) factors "because they require a court to decide whether the facts of the case satisfy a legal standard in order to derive a specific numerical range." *Id.,* at 22. But that does not distinguish the other sentencing factors, which require courts to do the same thing. Section 3553(a) states that district courts "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2) ]." In fact, the Guidelines generally offer more concrete advice in imposing a particular sentence and make it easier to review whether a court has abused its substantial discretion. There is no sound reason to conclude that the Guidelines—but not § 3553(a)'s other sentencing factors—are amenable to vagueness review.

3

Because the advisory Sentencing Guidelines are not subject to a due process vagueness challenge, § 4B1.2(a)'s residual clause is not void for vagueness. The judgment of the Court of Appeals, accordingly, is affirmed.

*It is so ordered.*

Justice KAGAN took no part in the consideration or decision of this case.

Justice KENNEDY, concurring.
As sentencing laws and standards continue to evolve, cases may arise in which the formulation of a sentencing provision leads to a sentence, or a pattern of sentencing, challenged as so arbitrary that it implicates constitutional concerns. In that instance, a litigant might use the word vague in a general sense—that is to say, imprecise or unclear—in trying to establish that the sentencing decision was flawed. That something is vague as a general matter, however, does not necessarily mean that it is vague within the well-established legal meaning of that term. And it seems most unlikely that the definitional structure used to explain vagueness in the context of fair warning to a transgressor, or of preventing arbitrary enforcement, is, by automatic transference, applicable to the subject of

sentencing where judicial discretion is involved as distinct from a statutory command. See *Johnson v. United States,* 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).

**\*12** The existing principles for defining vagueness cannot be transported uncritically to the realm of judicial discretion in sentencing. Some other explication of the constitutional limitations likely would be required.

These considerations inform my reading of the Court's opinion, in which I join.

Justice GINSBURG, concurring in the judgment.
This case has a simple solution. When Travis Beckles was convicted in 2007 of violating 18 U.S.C. § 922(g)(1), the official commentary to the career-offender Sentencing Guideline expressly designated his offense of conviction —possessing a sawed-off shotgun as a felon—a "crime of violence." See *ante,* at —— – ——; United States Sentencing Commission, Guidelines Manual § 4B1.2(a), comment., n. 1 (Nov. 2006). Harmonious with federal law and the text of § 4B1.2(a), that commentary was "authoritative." *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). *

Beckles therefore cannot, and indeed does not, claim that § 4B1.2(a) was vague as applied to him. And because his conduct was "clearly proscribed," he also "cannot complain of the vagueness of the [guideline] as applied to the conduct of others." *Holder v. Humanitarian Law Project,* 561 U.S. 1, 18–19, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (internal quotation marks omitted) (rejecting vagueness challenge to terrorism material-support statute, 18 U.S.C. § 2339B). I would accordingly defer any more encompassing ruling until a case we have agreed to take up requires one.

Justice SOTOMAYOR, concurring in the judgment.
**\*13** Justice GINSBURG explains why the Court's holding today is unnecessary. See *ante,* at —— – —— (opinion concurring in judgment). Petitioner Travis Beckles was sentenced to 30 years in prison on the basis of commentary promulgated by the U.S. Sentencing Commission interpreting a sentencing provision identical to the "residual clause" we held unconstitutionally vague two years ago in *Johnson v. United States,* 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). But *Johnson* affords Beckles no relief, because the commentary under

which he was sentenced was not unconstitutionally vague. Had the majority limited itself to this conclusion, I would have joined its opinion. Instead, the majority reaches far beyond what is necessary to resolve this case and announces that the U.S. Sentencing Guidelines as a whole are immune from vagueness challenges.

I write separately to explain why that holding is not only unnecessary, but also deeply unsound. The Guidelines anchor every sentence imposed in federal district courts. They are, " 'in a real sense[,] the basis for the sentence.' " *Molina–Martinez v. United States,* 578 U.S. ___, ___, 136 S.Ct. 1338, 1345, 194 L.Ed.2d 444 (2016) (quoting *Peugh v. United States,* 569 U.S. ___, ___, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013); emphasis deleted). The Due Process Clause requires that rules this weighty be drafted "with sufficient definiteness that ordinary people can understand" them, and "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Because I cannot agree with the majority's conclusion to the contrary, I respectfully concur in the judgment only.

## I

### A

The Due Process Clause prohibits the Government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson,* 576 U.S., at ___, 135 S.Ct., at 2556. The prohibition against vagueness in criminal proceedings is "a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The doctrine rests on two justifications. First, it ensures that people receive "fair notice of what is prohibited." *United States v. Williams,* 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Second, it safeguards the integrity of the judicial system by ensuring that criminal adjudications are not conducted in an arbitrary manner and that terms of imprisonment are not imposed "on an *ad hoc* and subjective basis." *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

*14 "These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." *Johnson,* 576 U.S., at ___, 135 S.Ct., at 2557. Just two Terms ago, we struck down a sentencing law—the Armed Career Criminal Act's (ACCA) residual clause, 18 U.S.C. § 924(e)(2)(B)—as unconstitutionally vague. See 576 U.S., at ___, 135 S.Ct., at 2563. We spent little time on whether the vagueness doctrine applied to such provisions. *Id.,* at ___, 135 S.Ct., at 2556–2557. And for good reason: A statute fixing a sentence imposes no less a deprivation of liberty than does a statute defining a crime, as our Sixth Amendment jurisprudence makes plain. See *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We instead analyzed the residual clause in light of "[n]ine years' experience trying to derive meaning from" it, 576 U.S., at ___, 135 S.Ct., at 2560, and declared the experiment a failure. "Invoking so shapeless a provision to condemn someone to prison for 15 years to life," we held, "does not comport with the Constitution's guarantee of due process." *Ibid.*

### B

The question before us is how these principles apply to the U.S. Sentencing Guidelines.

Congress established the U.S. Sentencing Commission in 1984 in order to address "[f]undamental and widespread dissatisfaction" with the then-prevailing regime of discretionary sentencing. *Mistretta v. United States,* 488 U.S. 361, 365–366, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); see Sentencing Reform Act of 1984, § 217(a), 98 Stat. 2017. It charged the Commission with reducing "the great variation among sentences imposed by different judges upon similarly situated offenders" and the resulting "uncertainty as to the time [each] offender would spend in prison." *Mistretta,* 488 U.S., at 366, 109 S.Ct. 647. The Sentencing Guidelines are the product of that mandate. The Guidelines establish a framework "under which a set of inputs specific to a given case (the particular characteristics of the offense and offender) yiel[d] a predetermined output (a range of months within which the defendant [can] be sentenced)." *Peugh,* 569 U.S., at ___, 133 S.Ct., at 2079. In doing so, the Guidelines ensure "*uniformity* in sentencing ... imposed by different federal courts for similar criminal conduct" and "*proportionality* in sentencing through a system that imposes appropriately

different sentences for criminal conduct of different severity." *Rita v. United States,* 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (internal quotation marks omitted).

**\*15** The Guidelines today play a central role in federal sentencing. Although no longer binding on federal courts, see *United States v. Booker,* 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines nonetheless "provide the framework for the tens of thousands of federal sentencing proceedings that occur each year," *Molina–Martinez,* 578 U.S., at ——, 136 S.Ct., at 1342. A district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States,* 552 U.S. 38, 49–50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The court must entertain the parties' arguments and consider the factors set forth in 18 U.S.C. § 3553(a) as possible grounds for deviation from the Guidelines range, 552 U.S. at 49–50, 128 S.Ct. 586, and "may not presume the ... range is reasonable," *id.,* at 50, 128 S.Ct. 586. But it must explain any deviation from the range on the record, and it must "ensure that the justification is sufficiently compelling to support the degree of the variance." *Ibid.*; see *Peugh,* 569 U.S., at —— – ——, 133 S.Ct., at 2086–2087. A district court that incorrectly calculates the Guidelines range commits reversible procedural error, see *Gall,* 552 U.S., at 51, 128 S.Ct. 586; a district court that imposes a sentence within the correct Guidelines range, by contrast, may be afforded a presumption that the sentence it has imposed is reasonable, see *Rita,* 551 U.S., at 347, 127 S.Ct. 2456.

The importance of the Guidelines in this process, as we explained last Term, makes them "not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina–Martinez,* 578 U.S., at ——, 136 S.Ct., at 1346. In most cases, it is the range set by the Guidelines, not the minimum or maximum term of imprisonment set by statute, that specifies the number of years a defendant will spend in prison. District courts impose a sentence within the Guidelines (or below the Guidelines based on a Government motion) over 80% of the time. *Ibid.*; see 2015 Annual Report and 2015 Sourcebook of Federal Sentencing Statistics (20th ed.) (Figure G), online at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/FigureG.pdf (as last visited Feb. 27, 2017). And when Guidelines ranges change—because the Guidelines themselves change, or because the court is informed of an error it made in applying them—sentences change, too. [1] See *Molina–Martinez,* 578 U.S., at ——, 136 S.Ct., at 1346; *Peugh,* 569 U.S., at ——, 133 S.Ct., at 2084–2085. It is therefore no exaggeration to say that the Guidelines are, " 'in a real sense[,] the basis for the sentence' " imposed by the district court. *Molina–Martinez,* 578 U.S., at ——, 136 S.Ct., at 1345 (quoting *Peugh,* 569 U.S., at ——, 133 S.Ct., at 2083; emphasis deleted).

C

**\*16** It follows from the central role that the Guidelines play at sentencing that they should be susceptible to vagueness challenges under the Due Process Clause.

Contrary to the majority's conclusion, an inscrutably vague Guideline implicates both of the concerns animating the prohibition on vagueness. First, a district court's reliance on such a Guideline deprives an ordinary person of "fair notice" of the consequences of his actions. See *Johnson,* 576 U.S., at ——, 135 S.Ct., at 2556. A defendant is entitled to understand the legal rules that will determine his sentence. But a vague Guideline is by definition impossible to understand. Take the career-offender Guideline at issue here. We explained in *Johnson* that the identically worded provision in the ACCA created "pervasive disagreement" among courts imposing sentences as to "the nature of the inquiry" that they were required to conduct. *Id.,* at ——, 135 S.Ct., at 2560. The result was a law that was " 'nearly impossible to apply consistently.' " *Ibid.* (quoting *Chambers v. United States,* 555 U.S. 122, 133, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (ALITO, J., concurring in judgment)). An ordinary person cannot be expected to understand the consequences that such a shapeless provision will have on his sentence. [2]

Second, and more importantly, a district court's reliance on a vague Guideline creates a serious risk of "arbitrary enforcement." See *Johnson,* 576 U.S., at ——, 135 S.Ct., at 2556. As set out above, although the Guidelines do not bind a district court as a *formal* matter, as a *functional* matter they "anchor both the district court's discretion and the appellate review process." *Peugh,* 569 U.S., at ——, 133 S.Ct., at 2087. It introduces an unacceptable degree of arbitrariness into sentencing proceedings to begin by applying a rule that is so vague that efforts to interpret it boil down to "guesswork and intuition."

*Johnson,* 576 U.S., at ——, 135 S.Ct., at 2559. One judge may conduct a statistical analysis to decide that a defendant's crime of conviction is not a crime of violence. Another may rely on gut instinct to conclude that it is. Still a third may "throw [our] opinions into the air in frustration, and give free rein to [her] own feelings" in making the decision. *Derby v. United States,* 564 U.S. 1047, 1049, 131 S.Ct. 2858, 180 L.Ed.2d 904 (2011) (Scalia, J., dissenting from denial of certiorari). Importantly, that decision is the end of the ballgame for a criminal defendant. Although he may ask the judge to vary downward from the Guidelines range, he must take the range as the starting point for his request. He may ask for a month here or a month there, but he is negotiating from a baseline he cannot control or predict. The result is a sentencing proceeding hopelessly skewed from the outset by "unpredictability and arbitrariness." *Johnson,* 576 U.S., at ——, 135 S.Ct., at 2558. The Due Process Clause does not tolerate such a proceeding.

**\*17** Consider, by way of example, a hypothetical version of Beckles' own sentencing proceeding in which the commentary played no clarifying role. Beckles was convicted of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 360 months in prison. That sentence sat at the bottom end of the applicable Guidelines range, factoring in the career-offender Guideline: 360 months to life. But had the career-offender Guideline *not* applied to Beckles, the Guidelines range calculated by the District Court would have been significantly lower: 262 to 327 months. See *Beckles v. United States,* Civ. No. 10–23517 (S.D.Fla., Mar. 4, 2013), App. 129–130. Absent that Guideline, Beckles would have been sentenced to between 33 and 98 fewer months in prison. The District Court admitted as much, explaining that had the Guideline not applied, she "would not have imprisoned Beckles to 360 months" in prison. *Id.,* at 149 (emphasis deleted). Years of Beckles' life thus turned solely on whether the career-offender Guideline applied. There is no meaningful way in which the Guideline exerted less effect on Beckles' sentence than did the statute setting his minimum and maximum terms of imprisonment; indeed, it was the Guidelines, not just the statute, that "fix[ed]" Beckles' "sentenc[e]" in every meaningful way. *Johnson,* 576 U.S., at ——, 135 S.Ct., at 2556–2557. Nothing of substance, in other words, distinguishes the Guidelines from the kind of laws we held susceptible to vagueness challenges in *Johnson* ; both law and Guideline alike

operate to extend the time a person spends in prison. The Due Process Clause should apply equally to each.

## II

The majority brushes past this logic in its decision to shield the Guidelines from vagueness challenges. In doing so, it casts our sentencing jurisprudence into doubt and upends the law of nearly every Court of Appeals to have considered this question. [3] None of its explanations justify its novel and sweeping conclusion.

## A

The majority first reasons that the Guidelines are not susceptible to vagueness challenges because they "do not fix the permissible range of sentences," *ante,* at ——, but merely "guide district courts in exercising their discretion," *ante,* at ——. But we have not embraced such formalism before, and the majority provides no coherent justification for its decision to do so here.

Indeed, we have refused before to apply exactly the formalistic distinction that the majority now embraces. In *Espinosa v. Florida,* 505 U.S. 1079, 1081, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (*per curiam* ), we held that a state's capital aggravating factor that was drafted in a manner "so vague as to leave the sentencer without sufficient guidance for determining the presence or absence of the factor" violated the Eighth Amendment. The factor was unconstitutional, we explained, notwithstanding the fact that only the jury, not the judge, was instructed on the factor; that the judge, not the jury, made the final decision to sentence the defendant to death; and that the judge, in doing so, was not required to defer to the jury's recommendation. "This kind of indirect weighing of an invalid aggravating factor," we explained, "creates the same potential for arbitrariness as the direct weighing of an invalid aggravating factor." *Id.,* at 1082, 112 S.Ct. 2926. In doing so, we effectively rejected just the argument the majority now embraces: that advisory guidelines lack the kind of binding legal effect that subject them to constitutional scrutiny.

**\*18** If there were any doubt that advisory sentencing guidelines are subject to constitutional limits, we dispelled it in *Peugh,* where we held that the Guidelines are

amenable to challenges under the *Ex Post Facto* Clause. See 569 U.S., at ——, 133 S.Ct., at 2077–2078. There, the Government argued that the "advisory" nature of the Guidelines rendered them immune from such claims. *Id., at ——, 133 S.Ct., at 2081–2082.* But we rejected such an argument. "The federal system," we explained, "adopts procedural measures intended to make the Guidelines the lodestone of sentencing," and "considerable empirical evidence indicate[s] that the ... Guidelines have the intended effect." *Id., at —— – ——, 133 S.Ct., at 2084.* We declined the Government's invitation to limit our *ex post facto* jurisprudence to rules that, as a formal matter, "increase[d] the maximum sentence for which a defendant is eligible." *Id., at ——, 133 S.Ct., at 2081.* And we explained that a rule may exert " 'binding legal effect' through ... procedural rules and standards for appellate review that, in combination, encourag[e] district courts to sentence within the guidelines." *Id., at ——, 133 S.Ct., at 2086.* It was not true, we concluded, that "the Guidelines are too much like guideposts and not enough like fences," *ibid.*; instead, the Guidelines were just fencelike enough— just lawlike enough—that they cannot be shielded from the Constitution's reach.

The same principle should dictate the same result in this case. How can the Guidelines carry sufficient legal weight to warrant scrutiny under the Eighth Amendment and the *Ex Post Facto* Clause, but not enough to warrant scrutiny under the Due Process Clause? Cf. *United States v. Hurlburt,* 835 F.3d 715, 724 (C.A.7 2016) (en banc) ("We see no principled way to distinguish *Peugh* on doctrinal grounds"). The majority offers no convincing answer. It asserts that the Due Process Clause "requires a different inquiry" than these provisions do. *Ante,* at ——. But it does not explain why it views this as relevant to the constitutional status of the Guidelines. A court considering a challenge to a criminal statute under the *Ex Post Facto* Clause will apply a different legal standard than will a court considering a vagueness challenge to the same statute; that does not make the statute more or less susceptible to constitutional challenge in one context than the other. Our opinion in *Peugh* is particularly difficult for the majority to escape, given that the *Ex Post Facto* Clause, like the Due Process Clause's prohibition against vagueness, is rooted in concerns about "fair warning" and " 'fundamental fairness.' " 569 U.S., at ——, 133 S.Ct., at 2085 (plurality opinion). The majority musters no persuasive explanation for why those concerns would have

less force in this context than in that one. That is because none exists.[4]

B

**\*19** The majority next posits that because courts have long sentenced defendants under purely discretionary regimes, there can be no vagueness concern with any system that, like the Guidelines regime, sets guideposts on the exercise of discretion. *Ante,* at —— – ——. But this argument fundamentally misunderstands the problem caused by a court's reliance on a vague sentencing guideline.

True enough, for many years, federal courts relied on "a system of indeterminate sentencing" in criminal cases. *Mistretta,* 488 U.S., at 363, 109 S.Ct. 647; see also K. Stith & J. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 9–14 (1998). Under such a scheme, a sentencing judge considers the full range of relevant aggravating and mitigating facts and circumstances, as well as his view of proper sentencing policy, and then imposes a sentence in light of those considerations. See *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"). As the majority notes, no party here "suggests that a system of purely discretionary sentencing could be subject to a vagueness challenge." *Ante,* at ——. The majority reasons that the Guidelines —which limit the sentencing judge's discretion from what he otherwise would have enjoyed—must therefore also be immune from vagueness attacks. *Ibid.*

But the majority misapprehends the nature of the constitutional infirmity that occurs when a sentencing judge relies on an inscrutably vague sentencing guideline. A defendant who is sentenced under a purely discretionary regime does not face the prospect of "arbitrary enforcement" by the sentencing judge, *Kolender,* 461 U.S., at 358, 103 S.Ct. 1855; rather, he faces a fact- and context-sensitive determination informed by the exercise of reasoned judgment. A defendant sentenced pursuant to an impossibly vague Guideline, by contrast, is put in an untenable position. The "lodestone" of his sentence

—the baseline against which the district court will assess his characteristics and his conduct—is set by a rule that is impossible to understand. Such a proceeding is the antithesis of due process. See *Giaccio v. Pennsylvania,* 382 U.S. 399, 403, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966) ("Implicit in [due process] is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce"). It is not reliance on discretion that makes a sentencing regime vague; it is reliance on an impenetrable rule as a baseline for the exercise of that discretion. Reliance on a rule of this kind, whether set out in a statute or in a Guideline, does not comport with " 'ordinary notions of fair play.' " *Johnson,* 576 U.S., at ——, 135 S.Ct., at 2557.

C

**\*20** The majority ends by speculating that permitting vagueness attacks on the Guidelines would call into question the validity of many Guidelines, and even the factors that Congress has instructed courts to consider in imposing sentences. See *ante,* at —— – ——. In doing so, the majority once more resuscitates arguments we have already considered and dismissed.

*Johnson* confronted and rejected a version of this argument. There, the Government contended that "dozens of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' " terms that—in its view—were indistinguishable from the residual clause at issue in that case. 576 U.S., at ——, 135 S.Ct., at 2561. We rejected the argument, explaining that such rules "call[ed] for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly ... some matter of degree.' " *Ibid.* (quoting *Nash v. United States,* 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232 (1913)). What rendered the ACCA's residual clause unconstitutionally vague, we explained,

was not that it required "gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion,*" but that it required the application of an ambiguous standard "to an idealized ordinary case of the crime." 576 U.S., at ——, 135 S.Ct., at 2561. Holding the residual clause unconstitutionally vague, in other words, cast no doubt on the dozens of laws elsewhere in the U.S. Code requiring the application of general standards to particular conduct.

The same is true here. The sentencing factors described by the majority bear no similarity to the categorical risk analysis that the Court held unconstitutionally vague in *Johnson,* nor to any other statutes it has previously found vague. Congress' instruction to district courts to consider, for instance, "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), bears little resemblance to statutes requiring subjective determinations as to whether conduct is "annoying" or "unjust." See *Coates v. Cincinnati,* 402 U.S. 611, 615–616, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed. 516 (1921). [5] And to the extent that the majority's concern is that subjecting sentencing factors to the Due Process Clause's prohibition on vagueness would risk the demise of discretionary sentencing regimes, that prospect is unlikely, for the reasons I have already explained.

**\*21** It violates the Due Process Clause "to condemn someone to prison" on the basis of a sentencing rule "so shapeless" as to resist interpretation. 576 U.S., at ——, 135 S.Ct., at 2560. But the Court's decision today permits exactly that result. With respect, I concur only in the judgment.

**All Citations**

--- S.Ct. ----, 2017 WL 855781, 17 Cal. Daily Op. Serv. 2040

---

Footnotes

* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

1 With one exception not relevant here, 18 U.S.C. § 3553(a)(4)(A) instructs sentencing courts to consider the Guidelines ranges that "are in effect on the date the defendant is sentenced." Accordingly, references in this opinion to the Guidelines are to the 2006 version.

**2**    Compare *United States v. Matchett,* 802 F.3d 1185, 1193–1196 (C.A.11 2015) (holding that the Guidelines are not subject to due process vagueness challenges), with, *e.g., United States v. Townsend,* 638 Fed.Appx. 172, 178, n. 14 (C.A.3 2015) (declining to follow *Matchett* ); *United States v. Pawlak,* 822 F.3d 902, 905–911 (C.A.6 2016) (holding that the Guidelines are subject to due process vagueness challenges); *United States v. Hurlburt,* 835 F.3d 715, 721–725 (C.A.7 2016) (en banc) (same); *United States v. Madrid,* 805 F.3d 1204, 1210–1211 (C.A.10 2015) (same).

**\***    Beckles protests that the commentary is "inconsistent with" § 4B1.2(a), and thus inoperative, once the residual clause is stricken from the Guideline as impermissibly vague. Brief for Petitioner 49; see *Stinson,* 508 U.S., at 38, 113 S.Ct. 1913. But excising the problematic provision *first* and considering illustrative language *second* "flip[s] the normal order of operations in adjudicating vagueness challenges." Brief for United States 55. This Court has routinely rejected, in a variety of contexts, vagueness claims where a clarifying construction rendered an otherwise enigmatic provision clear as applied to the challenger. See *Bell v. Cone,* 543 U.S. 447, 453, 457–458, 125 S.Ct. 847, 160 L.Ed.2d 881 (2005) (*per curiam* ) (capital aggravating factor clarified by state-court precedent); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 500–502, and n. 18, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (quasi-criminal ordinance clarified by licensing guidelines); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 395, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) (federal regulation clarified by agency adjudications).

**1**    The evidence before us suggests that the same is true of the career-offender Guideline at issue here. Given the near consensus among the lower courts that this Guideline is unconstitutionally vague, see n. 3, *infra,* some courts have proceeded to resentence defendants whose sentences were originally enhanced under the Guideline. See App. to Reply Brief 1–14. In these resentencings, "every defendant but one received a sentence lower than the sentence originally imposed," and the average defendant received a sentence "more than [three] years lower than the original sentence." Reply Brief 12.

**2**    Our decision in *Irizarry v. United States,* 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008), is not to the contrary. In *Irizarry* we held that Federal Rule of Criminal Procedure 32(h) does not require a judge to inform a defendant, in advance of a sentencing proceeding, of his intent to vary above the Guidelines range. *Id.,* at 715–716, 128 S.Ct. 2198. That narrow decision has no bearing on the broader question whether ordinary people are entitled to fair notice, under the Due Process Clause, of the rules that will dictate their punishment.

**3**    See *United States v. Hurlburt,* 835 F.3d 715, 721–725 (C.A.7 2016) (en banc) (the Guidelines are subject to vagueness challenges); *United States v. Calabretta,* 831 F.3d 128, 136–137 (C.A.3 2016) (same); *United States v. Sheffield,* 832 F.3d 296, 312–313 (C.A.D.C.2016) (same); *United States v. Pawlak,* 822 F.3d 902, 905–911 (C.A.6 2016) (same); *United States v. Madrid,* 805 F.3d 1204, 1210–1211 (C.A.10 2015) (same). But see *United States v. Matchett,* 802 F.3d 1185, 1193–1196 (C.A.11 2015) (they are not).

**4**    The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)—that is, during the period in which the Guidelines *did* "fix the permissible range of sentences," *ante,* at —— —may mount vagueness attacks on their sentences. See Brief for Scholars of Criminal Law, Federal Courts, and Sentencing as *Amici Curiae* 33–34. That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.

**5**    Indeed, the Ninth Circuit has held for decades that the Guidelines are subject to vagueness challenges, see *United States v. Helmy,* 951 F.2d 988, 993 (C.A.9 1991), yet the Government represents that that court has never found a Guideline unconstitutionally vague. See Reply Brief for United States 20.

3

---

**End of Document**        © 2017 Thomson Reuters. No claim to original U.S. Government Works.